# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2020-CP-00950-COA

**ALFRED WILLIAMS**                                                                    **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                                                                **APPELLEE**

DATE OF JUDGMENT:              08/18/2020
TRIAL JUDGE:                           HON. ANTHONY ALAN MOZINGO
COURT FROM WHICH APPEALED:  LAMAR COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:     ALFRED WILLIAMS (PRO SE)
ATTORNEY FOR APPELLEE:      OFFICE OF THE ATTORNEY GENERAL
                                       BY: SCOTT STUART
NATURE OF THE CASE:          CIVIL - POST-CONVICTION RELIEF
DISPOSITION:                       REVERSED AND REMANDED - 02/15/2022
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

   **EN BANC.**

   **GREENLEE, J., FOR THE COURT:**

¶1.     Alfred Williams appeals from the Lamar County Circuit Court's denial of post-conviction collateral relief (PCR).  After review, we reverse the circuit court's judgment and remand for further proceedings consistent with this opinion.

## FACTS AND PROCEDURAL HISTORY

¶2.     In August 2011, Williams was convicted of fondling and was sentenced to fifteen years, with seven years to serve, in the custody of the Mississippi Department of Corrections with eight years of post-release supervision (PRS).

¶3.     In March 2019, a field officer signed an "Affidavit of Violation of Post Release." According to the officer, Williams violated the following conditions of his PRS:

[Condition] (A) Commit no offense against the laws of this [or] any other state of the United States, or laws of the United States: Offender was arrested by the Hattiesburg Police Department for Possession of a Controlled Substance (Marijuana) with Intent to Distribute.

Condition (L) Defendant shall pay all fines, fees, restitution, and all costs of court and assessment ar[e] to be paid at a minimum of $100.00 per month beginning (30) days from the date of this order: Offender [has] never paid anything to the court. He ow[e]s the Lamar Court 2458.00.

¶4.  At a hearing in May 2019, the following colloquy occurred:

COURT:  Alfred Williams. Mr. Williams, do you understand why you're here today?

WILLIAMS:  Yes, sir.

COURT:  Okay, I remember you Mr. Williams. You were originally convicted of [fondling]. You've now been arrested for possession . . . with intent to distribute; is that correct?

WILLIAMS:  Yes, sir.

COURT:  I'm not asking you whether you're guilty or not guilty. Can you perhaps give me some kind of statement that would help me make a decision?

WILLIAMS:  Yes, sir. That won't ever happen again, possession with intent. I'm sorry. I ask the [c]ourt to have mercy on me, and I'm sorry. I guess I had a stroke since I've been out of prison, and I do go home and stay out of trouble. I don'[t] smoke, drink or do drugs. I'm asking, Your Honor, have mercy [on] me and reinstate my probation and give me another chance.

After a short recess the court stated:

Mr. Williams, my final decision has been made. I've reconsidered your sentence, and based on the new arrest of possession -- I had intended to give

2

you the remainder five years to serve the remainder of your probation, and that'll be the sentence of the Court today. You're dismissed.

¶5. Subsequently, the court entered an "Order of Revocation of Post Release." The order noted that Williams had violated the conditions of his PRS when (1) he was arrested by the Hattiesburg Police Department for possession of a controlled substance (marijuana) with intent to distribute, and (2) he failed to pay the court $2,458. Ultimately, the court revoked Williams' PRS and ordered him to serve the remaining five years of the eight years of his PRS.

¶6. At some point, the district attorney decided to nolle prosequi Williams' drug-possession charge. As a result, in June 2020, over a year after the May 2019 hearing, Williams filed a motion for reconsideration of his recommitment sentence. Williams asked the court to reinstate his period of PRS in light of the district attorney's decision to nolle prosequi the charge that had resulted in his PRS revocation. The court initially denied Williams' motion for reconsideration. However, a couple of weeks later, the court vacated its order. The court held that Williams' motion should have been considered a PCR motion and ordered the State to respond to Williams' motion.

¶7. In its response, the State asserted that Williams admitted to the arresting officer that he sold marijuana in order to afford his own place to live. Additionally, the State represented that a probation officer executed an affidavit stating that Williams had failed to make payments toward his fines, fees, or restitution and still owed the Lamar County Circuit Court

3

at least $2,458. Therefore, the State argued that Williams' motion should be denied.[1]

¶8.    The court entered an order denying post-conviction relief on August 18, 2020. The court noted that the sole issue was whether Williams' PRS should be reinstated in light of the district attorney's decision to nolle prosequi the charge that resulted in Williams' PRS revocation. Ultimately, the court found that although the district attorney decided not to pursue the drug-possession charge, Williams had confessed to the crime during the revocation hearing. Therefore, the court held that reasonable grounds existed to find Williams violated the conditions of his PRS.

¶9.    Subsequently, Williams filed a document that the circuit court treated as a notice of appeal.[2] On appeal, Williams seemingly claims (1) the court erred by revoking his PRS, (2) the court failed to revoke his PRS within thirty days, (3) his double jeopardy rights were violated when his PRS was revoked, and (4) the court imposed an illegal sentence when he was initially sentenced in August 2011 to eight years of PRS.[3]

---

[1] The State acknowledged that "[t]he charges against the Defendant were *Nolle Prosequi* by the Forrest County District Attorney's Office."

[2] The court entered a "Sua Sponte Order Modifying the Record." In the order, the court mentioned that its order denying post-conviction relief was filed in Williams' criminal case instead of his civil PCR case. "Because the [c]ourt's order had the criminal cause number, Williams filed an appeal of that case."

[3] This Court, on its own motion, entered an order to supplement the record with materials related to the revocation of Williams' PRS because they were necessary for this Court's review. Specifically, the record was supplemented with certified copies of (1) the circuit clerk's docket entries; (2) the violation affidavit; (3) the revocation order; and (4) the transcript of the revocation hearing.

**STANDARD OF REVIEW**

¶10. "When reviewing a [circuit] court's denial or dismissal of a PCR motion, we will only disturb the [circuit] court's decision if it is clearly erroneous; however, we review the [circuit] court's legal conclusions under a de novo standard of review." *Williams v. State*, 228 So. 3d 844, 846 (¶5) (Miss. Ct. App. 2017) (quoting *Thinnes v. State*, 196 So. 3d 204, 207-08 (¶10) (Miss. Ct. App. 2016)).

**DISCUSSION**

¶11. Under the Mississippi Uniform Post-Conviction Collateral Relief Act (UPCCRA), Williams had three years to file a PCR motion. Miss. Code Ann. § 99-39-5(2) (Rev. 2020). However, excepted from the three-year statute of limitations are those cases in which the petitioner can demonstrate that his probation, parole, or conditional release has been unlawfully revoked. *Id*. § 99-39-5(2)(b).

### I. Revocation

¶12. Williams claims that the court erred by denying post-conviction relief. More specifically, Williams argues that the court should have reinstated his period of PRS because the district attorney ultimately decided to nolle prosequi the charge that was used to revoke his PRS.

¶13. As set forth by statute and our rules of criminal procedure, "[a] hearing to determine whether probation should be revoked shall be held before the sentencing court . . . ." MRCrP 27.3(a); *see* Miss. Code Ann. § 47-7-37 (Supp. 2018). "[A] probationer may waive the

5

hearing . . . and the sentencing court may make a final disposition of the issue, if: (1) the probationer has been given sufficient notice of the charges and sufficient notice of the evidence to be relied upon; and (2) the probationer admits, under the requirements of Rule 27.3(e), commission of the alleged violation." MRCrP 27.3(b). The requirements of Rule 27.3(e) are as follows:

> Before accepting an admission by a probationer that the probationer has violated a condition of probation or a lawful instruction issued by the supervising officer, the court shall determine that the probationer understands the following:
>
>> (1) the nature of the violation to which an admission is offered;
>>
>> (2) the right to be represented by counsel as provided by Rule 27.3(d);
>>
>> (3) the right to testify and to present witnesses and other evidence on the probationer's own behalf and to cross-examine adverse witnesses under subsection (f)(1); and
>>
>> (4) that, if the alleged violation involves a criminal offense for which the probationer has not yet been tried, the probationer may still be tried for that offense and, although the probationer may not be required to testify, that any statement made by the probationer at the present proceeding may be used against the probationer at a subsequent proceeding or trial.
>
> The court shall also determine that the probationer waives these rights, that the admission is voluntary and not the result of force, threats, coercion, or promises, and that there is a factual basis for the admission.

"Proceedings to revoke . . . [a] period of post-release supervision shall be conducted in

6

accordance with Rule 27." MRCrP 27.4.[4]

¶14.    Assuming the person on PRS does not waive the hearing, the court may revoke a person's PRS and impose any or all of the sentence if the court "finds by a preponderance of the evidence, that . . . [the] person under post-release supervision has committed a felony or absconded." Miss. Code Ann. § 47-7-37.1. "[T]he mere arrest of a probationer is not a violation of probation." *Elkins v. State*, 116 So. 3d 185, 188 (¶12) (Miss. Ct. App. 2013) (quoting *Brown v. State*, 864 So. 2d 1058, 1060 (¶9) (Miss. Ct. App. 2004)). "[W]hen alleged criminal activity is the basis for revocation, the State 'must show proof of an actual conviction, or that a crime has been committed and that it is more likely than not that the probationer committed the offense.'" *Lewis v. State*, 291 So. 3d 398, 400 (¶8) (Miss. Ct. App. 2020) (quoting *Brown*, 864 So. 2d at 1060 (¶9)).

¶15.    The entirety of the revocation hearing is transcribed below:

COURT:          Alfred Williams. Mr. Williams, do you understand why you're here today?

WILLIAMS:       Yes, sir.

COURT:          Okay, I remember you, Mr. Williams. You were

---

[4] Additionally, Mississippi Rule of Criminal Procedure 27.3(f)(2) states:

If the alleged violation involves a criminal offense for which the probationer has not yet been tried, the probationer shall be advised at the beginning of the revocation hearing that, regardless of the outcome of the revocation hearing, the probationer may still be held for that offense and that any statement made by the probationer at the hearing may be used against the probationer at a subsequent proceeding or trial.

originally convicted of [fondling]. You've now been arrested for possession . . . with intent to distribute; is that correct?

WILLIAMS: Yes, sir.

COURT: I'm not asking you whether you're guilty or not guilty. Can you perhaps give me some kind of statement that would help me make a decision?

WILLIAMS: Yes, sir. That won't ever happen again, possession with intent. I'm sorry. I ask the [c]ourt to have mercy on me, and I'm sorry. I guess I had a stroke since I've been out of prison, and I do go home and stay out of trouble. I don'[t] smoke, drink or do drugs. I'm asking, Your Honor, have mercy [on] me and reinstate my probation and give me another chance.

COURT: Mr. Dunston, you're going to be around here to help me with that other matter in a few minutes, that we talked about?

DUNSTON: Yes, sir.

COURT: You needed to go by four, didn't you?

MILLER: Five.

COURT: By five.

COURT: Okay, have a seat, Mr. Williams, I'll make a decision in a few minutes.

WILLIAMS: Yes, sir.

(Short Recess)

COURT: Mr. Williams, my final decision has been made. I've reconsidered your sentence, and based on the new arrest of possession - - I had intended to give you the remainder

8

five years to serve the remainder of your probation, and that'll be the sentence of the [c]ourt today. You're dismissed.

WILLIAMS:          Thank you, Your Honor.

¶16.   Based on the hearing transcript, the judge seemingly relied on Williams' arrest to revoke his PRS. However, in the order denying post-conviction relief, the court concluded that Williams' statement "That won't ever happen again . . ." was a confession, or admission, to the crime of possession with intent.

¶17.   Even if Williams' statement at the hearing was an admission, there is no evidence in the record that the court complied with rules of criminal procedure—specifically, Rule 27.3(e). Further, because Williams had not been convicted of possession with intent, the State had to show by a preponderance of the evidence that Williams committed a felony. However, the State did not have the opportunity to present any evidence at the hearing—no witnesses were called, and no documentary evidence was presented. Although the State asserted in its response to Williams' PCR motion that Williams admitted to the arresting officer that he sold marijuana in order to afford his own place to live, there was not any evidence produced in support of this assertion at the hearing.

¶18.   Although the court's order of revocation noted that Williams had violated two conditions of his PRS—(1) when he was arrested for possession with intent and (2) when he failed to pay the court $2,458—we cannot say that there was sufficient evidence to revoke Williams' PRS and impose a period of incarceration on the basis of the alleged failure to pay

9

the court. Our rules of criminal procedure provide:

> In cases involving breach of a condition of probation because of nonpayment of a fine, restitution, or court costs, incarceration shall not automatically follow nonpayment. Incarceration may be employed only after the court has examined the reasons for nonpayment and finds, on the record, that the probationer could have satisfied payment but refused to do so.

MRCrP 27.3(f)(3). However, no mention of the alleged failure to pay was made at the hearing. Furthermore, the failure to pay constitutes a "technical violation." *See* Miss. Code Ann. § 47-7-2(q) (Rev. 2015) (A "[t]echnical violation" is defined as "an act or omission by the probationer that violates a condition or conditions of probation placed on the probationer by the court or the probation officer."). Mississippi Code Annotated section 47-7-37 delineates a court's authority when revoking probation for a "technical violation."

¶19. Because the court did not have sufficient evidence to revoke Williams' PRS, we must reverse the judgment of the circuit court and remand for further proceedings. The dissent suggests that this issue is not properly before this Court. Although Williams' original motion does not reference the UPCCRA, the circuit court construed Williams' motion as a PCR motion that "argued that [his] PRS had been wrongfully revoked." Notwithstanding the logic contained in the dissent, because the court below treated the motion as one for post-conviction relief, so shall we. The circuit court rejected Williams' PCR claim by finding that Williams had "admitted" at his revocation hearing that he had committed a new crime and, therefore, that there was sufficient evidence to support the revocation. In both the circuit court and on appeal, the State has addressed that issue on the merits and has never argued

10

that Williams waived the issue. Therefore, to the extent that the State could have argued waiver at some point, that argument has itself been waived. *See Mayton v. Oliver*, 247 So. 3d 312, 321 (¶31) (Miss. Ct. App. 2017) ("A party can waive a waiver argument by not making the argument below or in its briefs." (quoting *Fortner v. Specialty Contracting LLC*, 217 So. 3d 736, 746 (¶31) (Miss. Ct. App. 2017))). Under these circumstances, the issue that the circuit court actually decided is properly before this Court.

¶20. In remanding for further proceedings, we note this Court's recent decision in *Lewis v. State*, 291 So. 3d 398 (Miss. Ct. App. 2020): after an MDOC supervision officer alleged that Lewis violated the terms of his PRS by being arrested and failing to pay his fines, the circuit court held a "revocation hearing." *Id*. at 399 (¶2). At the hearing, Lewis admitted to the arrests; however, no other evidence regarding the arrests was presented. *Id*. at (¶3). The record was equally unclear about the fines. *Id*. Ultimately, the court revoked Lewis' PRS and later stated in its order denying post-conviction relief that "[t]he defendant's own admission [wa]s a sufficient basis to find that he violated the terms of his PRS" and that "[Lewis] had not paid his fines and fees as ordered." *Id*. at (¶7).

¶21. In reversing the circuit court's judgment, this Court noted that the only basis for the revocation was Lewis' own admission that he was arrested. *Id*. at (¶9). "There was no evidence or testimony to support any allegation that Lewis had not paid his fines." *Id*. at (¶7). This Court further noted that the circuit court did not conduct any evidentiary inquiries of Lewis or anyone else. *Id.* "Lewis may well have committed . . . the offenses referenced

11

in the revocation petition, but the circuit court committed error by revoking Lewis's PRS on scant information that was advanced at the revocation hearing. Mere arrest cannot be the basis for probation revocation." *Id*. at (¶10). Because "there was no basis to find that it was more likely than not that Lewis had committed any of the offenses listed in the revocation petition," this Court reversed and remanded for an evidentiary hearing. *Id.* at (¶¶1, 10); *see also Brown*, 864 So. 2d at 1060 (¶11) (reversing and remanding for an evidentiary hearing); *Scott v. State*, 24 So. 3d 1039, 1043 (¶14) (Miss. Ct. App. 2010) (reversing and remanding for an evidentiary hearing where the order of revocation of probation appeared, on its face, to be based upon Scott's arrest and his being charged, but not on the underlying facts and circumstances behind the arrest, and where the record contained no evidence that Scott violated the conditions of his probation).

¶22. Similarly, Williams may well have committed the offenses referenced in the "Affidavit of Violation," but the circuit court committed error by revoking Lewis' PRS on such scant information.[5] Accordingly, we reverse and remand this case for further proceedings.[6]

---

[5] A close review of the record reveals that the court, not the State, abbreviated the hearing with its ruling. The State's interest in enforcing the law on revocation should not be short-circuited because of the judge's ruling in this instance.

[6] Although the district attorney decided to nolle prosequi the charge that resulted in Williams' PRS revocation, our supreme court has held that "where a nolle prosequi is entered[,] the particular case is at an end on the docket, but this does not bar another prosecution for the same offense if commenced in the court where the case originated." *Walton v. City of Tupelo*, 229 Miss. 193, 196, 90 So. 2d 193, 194 (1956).

## II. Timeliness of Revocation Hearing

¶23. Williams claims the court failed to revoke his PRS within thirty days. However, this Court has held that "issues raised for the first time on appeal are procedurally barred from review as they have not first been addressed by the [circuit] court." *Bland v. State*, 312 So. 3d 417, 419 (¶11) (Miss. Ct. App. 2021) (quoting *Griffin v. State*, 824 So. 2d 632, 635 (¶7) (Miss. Ct. App. 2002)). Additionally, Williams does not cite any legal authority in support of his claim. As discussed, this Court has held that "it is the duty of the appellant to provide authority in support of an assignment of error[,]" and the failure to do so is a procedural bar on appeal. *Young v. State*, 919 So. 2d 1047, 1049 (¶5) (Miss. Ct. App. 2005); *accord* M.R.A.P. 28(a)(7). Therefore, this issue is procedurally barred.

## III. Double Jeopardy

¶24. Williams seemingly claims that his double jeopardy rights were violated when his PRS was revoked. Again, this Court has held that "issues raised for the first time on appeal are procedurally barred from review as they have not first been addressed by the [circuit] court." *Bland*, 312 So. 3d at 419 (¶11) (quoting *Griffin*, 824 So. 2d at 635 (¶7)). Additionally, Williams does not cite any legal authority in support of his claim. As discussed, "it is the duty of the appellant to provide authority in support of an assignment of error[,]" and the failure to do so is a procedural bar on appeal. *Young*, 919 So. 2d at 1049 (¶5); *accord* M.R.A.P. 28(a)(7). Therefore, this issue is procedurally barred.

¶25. Notwithstanding the procedural bars, we briefly note that "a petition to revoke

13

probation or to revoke suspension of a sentence is not a criminal case and not a trial on the merits of the case,' and therefore double jeopardy does not apply." *Swaim v. State*, 281 So. 3d 313, 316 (¶13) (Miss. Ct. App. 2018) (quoting *Ray v. State*, 229 So. 2d 579, 581 (Miss. 1969)).

## IV.    Illegal Sentence

¶26.    Finally, Williams seemingly claims that he received an illegal sentence when the court initially sentenced him to eight years of PRS.[7]  Williams asserts that the maximum amount of PRS he could have received was five years.  However, as discussed, this Court will not consider issues raised for the first time on appeal.  *Bland*, 312 So. 3d at 419 (¶11).  Additionally, Williams does not cite any legal authority in support of his claim.  Therefore, this issue is procedurally barred.  *Young*, 919 So. 2d at 1049 (¶5); *accord* M.R.A.P. 28(a)(7).

¶27.    Notwithstanding these procedural bars, we note that while supervised probation is limited to five years, post-release supervision is not.  *Johnson v. State*, 925 So. 2d 86, 101 (¶27) (Miss. 2006).  "While [Mississippi Code Annotated section 47-7-34] unquestionably limits to five years the period of time that the MDOC may supervise an offender who is on post-release supervision, *the clear language of the statute does not limit the total number of years of post-release supervision to five years*.  *Id*. (quoting *Miller v. State*, 875 So. 2d 194, 199 (Miss. 2004)) (emphasis in *Johnson*).  Under our laws, "the total number of years of

---

[7] Although Williams takes issue with the court's initial sentence of eight years of PRS, he was sentenced to serve the remaining five years after the court revoked his PRS.

14

incarceration plus the total number of years of post-release supervision shall not exceed the maximum sentence authorized to be imposed by law for the felony committed." *Id*. Here, the maximum sentence Williams could receive for fondling was fifteen years. Miss. Code Ann. § 97-5-23 (Rev. 2006). Williams was sentenced to serve seven years in the custody of the MDOC and eight years on PRS, so this issue lacks merit. However, as discussed in Part I, there was insufficient evidence to revoke Williams' PRS.

## CONCLUSION

¶28. After review, we reverse the judgment of the circuit court and remand for further proceedings.

¶29. **REVERSED AND REMANDED.**

**CARLTON AND WILSON, P.JJ., WESTBROOKS, McDONALD, LAWRENCE, McCARTY AND SMITH, JJ., CONCUR. EMFINGER, J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY BARNES, C.J.**

**EMFINGER, J., DISSENTING:**

¶30. On August 17, 2011, Alfred Williams was found guilty of fondling. The Circuit Court of Lamar County, Mississippi, sentenced Williams to a term of fifteen years in the custody of the Mississippi Department of Corrections (MDOC), to be released after having served seven years, and placed on post-release supervision (PRS) for eight years. Apparently, Williams was released from incarceration on or about September 1, 2017. On March 1, 2019, while on PRS, Williams was arrested in Forrest County, Mississippi, and charged with the commission of a new felony offense: possession of a controlled substance with the intent

to distribute. MDOC filed an affidavit charging Williams with a violation of his PRS conditions. Williams was brought before the Lamar County Circuit Court on May 17, 2019. As a result of that hearing, Williams was found to be in violation of his PRS conditions and was sentenced to serve the remaining five years of his sentence. The "Order of Revocation of Post Release" was entered on May 22, 2019.

¶31. A little over a year after Williams' revocation and sentence in Lamar County, on May 26, 2020, the new drug charge in Forrest County was apparently nolle prosequied.[8] Williams then filed a pleading in the Circuit Court of Lamar County, which reads as follows:

> ORDER OF RECONSIDERATION OF
> THE DEFENDANT'S SENTENCE
>
> THIS MATTER, comes before this Honorable Court for consideration of re-sentencing defendant due to the charge of Possession of Controlled Substance with Intent, being dismissed, by the Forrest County Circuit Courts. Williams respectfully seeks, and prays that this honorable court, would find his motion well taken, and issue an order reinstating defendants probation. Defendant has been incarcerated since March 1, 2019 in the Forrest County Detention Center on the charge of Possession of Controlled Substance with Intent. Due to the charge being dismissed against the defendant, defendant prays that this honorable Court would consider reinstating his probation.

Initially this pleading was filed in the criminal case and treated as a request to reconsider the sentence imposed upon Williams as a result of his revocation a year earlier. Williams sought reconsideration of the five-year recommitment sentence as a result of the new felony charge having been "dismissed." The trial court entered an order, which was stamped filed on June

---

[8] There is no evidence of the nolle prosequi in the record. However, both Williams' pleading and the State's response represent that the charge was dismissed.

16

25, 2020, denying the request, finding that Williams had admitted to the violation at the revocation hearing and that the dismissal of the new felony charge was irrelevant.[9]

¶32. Although this pleading was not verified by the oath of the petitioner and did not meet the other requirements for a motion for relief pursuant to the Mississippi Uniform Post-Conviction Collateral Relief Act (*see* Miss. Code Ann. § 99-39-9(Rev. 2020)), the trial court ultimately decided to treat this pleading as a request for post-conviction relief. The trial court entered an order "vacating" its prior order denying the request and ordered that the State file a response to this pleading. The State's response was dated August 17, 2020, but was not filed of record until August 26, 2020. On August 18, 2020, the circuit judge entered an order denying Williams' motion for post-conviction relief.

¶33. To the extent Williams' pleading can be considered a request for post-conviction relief, he asked for relief based solely upon the dismissal of the new charge. He did not allege that his PRS period was wrongfully revoked. He did not challenge the sufficiency of the evidence at the revocation hearing. He did not allege that any of his rights were violated. He simply sought to have the court reconsider his recommitment sentence as a result of the dismissal of the new charge.

¶34. In *Roney v. State*, 294 So. 3d 1268, 1272 (¶12) (Miss. Ct. App. 2020), this Court said:

> The standard of proof to determine if a defendant has violated the terms of

---

[9] In any event, the trial court had no authority to reconsider or modify a sentence that had been imposed during a term of court that had ended months earlier. *See Pollard v. State*, 12 So. 3d 584, 585 (¶5) (Miss. Ct. App. 2009).

17

post-release supervision is enough to "show the defendant 'more likely than not' violated probation," not proof beyond a reasonable doubt. *Anderson v. State*, 89 So. 3d 645, 653 (¶22) (Miss. Ct. App. 2011) (quoting *Younger v. State*, 749 So. 2d 219, 222 (¶13) (Miss. Ct. App. 1999)). In addition, **a probationer does not have to be convicted of a crime before probation can be revoked**. *Younger*, 749 So. 2d at 222 (¶12) (citing *Berdin v. State*, 648 So. 2d 73, 79 (Miss. 1994), *overruled on other grounds by Smith v. State*, 742 So. 2d 1146, 1146 (¶1) (Miss. 1999)).

(Emphasis added). Although the new charge may have been dismissed in Forrest County, Williams was not entitled to relief based upon that fact alone. Further, at the revocation hearing a year earlier, the trial court obviously found that it was more likely than not that Williams had committed the new felony based upon Williams' admission during the hearing.

¶35. Prior to the court's order denying post-conviction relief, Williams had not made any other challenge to his revocation. All other matters raised by Williams on appeal are not properly before the Court because they were not raised before the trial court. In *Fluker v. State*, 17 So. 3d 181, 183 (¶5) (Miss. Ct. App. 2009), this Court said:

> As for the argument he makes on appeal, a defendant who fails to raise an issue in his motion for post-conviction relief before the trial court may not raise that issue for the first time on appeal. *Gardner v. State*, 531 So. 2d 805, 808-09 (Miss. 1988) (citing *Colburn v. State*, 431 So. 2d 1111, 1114 (Miss. 1983)).

¶36. Williams was denied relief because, based upon the "face of the motion" he filed, he was not entitled to any relief. Williams simply did not raise any claim regarding the legality of the PRS revocation. Because I would affirm the trial court's denial of Williams' request for post-conviction relief, I dissent.

**BARNES, C.J., JOINS THIS OPINION.**

18